IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **MAXIMO ESPINAL,** )( | **Civil Action No.: 4:22cv1149** |
| )( | **(Jury Trial)** |
| *Plaintiff,* )( | |
| )( | |
| V. )( | |
| )( | |
| **CITY OF HOUSTON, TEXAS;** )( | |
| **OFFICER M.T. LONG,** *Individually;* )( | |
| **OFFICER C.K. LAM,** *Individually,* and )( | |
| **JOHN DOE OFFICER,** *Individually;* )( | |
| )( | |
| *Defendants.* )( | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE COURT:**

**NOW COMES** Plaintiff **MAXIMO ESPINAL** complaining of the CITY OF HOUSTON, TEXAS; OFFICER M.T. LONG, *Individually;* OFFICER C.K. LAM, *Individually,* and JOHN DOE OFFICER, *Individually;* and will show the Court the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's federal claims, under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction, under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims, if any. Venue is proper in this Court, under 28 U.S.C. § 1391(b) because the incident at issue took place in Harris County, Texas within the United States Southern District of Texas.

## PARTIES

2. Plaintiff MAXIMO ESPINAL is a resident of Harris County, Texas.

3. Defendant CITY OF HOUSTON, TEXAS, is a municipality existing under the laws of the State of Texas and situated mainly in Harris County, Texas in the U.S. Southern District of Texas and can be served with process by serving the City of Houston Secretary at 901 Bagby, Houston, TX 77012.

4. Defendant OFFICER M.T. LONG is sued in his individual capacity and can be served with process at 61 Reisner, Houston, TX 77002 or wherever he is found.

5. Defendant OFFICER C.K. LAM is sued in his individual capacity and can be served with process at 61 Reisner, Houston, TX 77002 or wherever he is found.

6. Defendant JOHN DOE OFFICER is a Houston police officer about 6 foot or so tall, bald, Caucasian, and was the driver that took Plaintiff to jail and is sued in his individual capacity and can be served with process at 61 Reisner, Houston, TX 77002 or wherever he is found.

## FACTS

7. Maximo Espinal ("Max") is 42 years old and has worked as a commissioned security officer since around 2009.

8. Max, save for the incidents described herein, has never been arrested

nor convicted of any crime in his life.

9. Max served four years in the United States Army and has an honorable discharge.

10. April 9, 2020 Max was at his security job in uniform at an office building at night. Max had worked there many years. It was dark and the tenants were gone.

11. As Max was watching the security camera monitors he noticed an SUV driving into property which he did not recognize and then turning off its lights. No one got out.

12. Then the SUV moved to the back of the property and past at least two prominent "No Trespassing" signs and into a dead end area where the SUV stopped in front of one of the no trespassing signs. There is no reason for a tenant to be in that area at that time of night.

13. Max had left the building at this time to investigate the trespasser. He had a shotgun and a flashlight. The location of the office building is a high crime area and several crimes have occurred on the premises in the past.

14. When Max first came upon the trespasser he was getting back into the SUV. Max did not know why the trespasser had been outside the vehicle or what he was doing.

15. All during this time one could not tell how many people were in the

SUV.

16. Momentarily the trespasser got into the SUV and then noticed Max and rolled down his window and showed Max a badge and stated he was the police. The trespasser asked why Max had a "rifle." Max said it was a shotgun and that it is a high crime area. The trespasser acknowledged it was a high crime area. The trespasser was in plain clothes and save for the badge there was no other indication he was a police officer. Max did not point his shotgun or other weapon at the trespasser.

17. Eventually it became known that the trespasser was Defendant Houston police Officer M.T. Long (Officer Long) who had been working that area for some time so was undoubtedly aware of the murders, assaults, drug trafficking, prostitution, thefts, and other crimes that occurred in the area.

18. At around 12:11am on April 11, 2022 Maximo Espinal was again working security at the office building in uniform. Max was outside the building at the northeast property entrance by one of the handicap ramps under a lit lamppost when he saw a vehicle enter the property and immediately the vehicle came directly at him and stopped only five yards in front of him putting him directly between the vehicle's headlights.

18. Fearing for his safety Max gripped his shotgun tightly at the low ready, muzzle still pointing to the ground, paying close attention to the vehicle's doors in

case someone intended him harm.

19. The vehicle then backed up, the driver lowered the front passenger window, and at this point Max was able to recognize the driver, and the vehicle, as Officer M.T. Long he had found on the property the previous night.

20. Officer Long angrily shouted at Max about Max's "rifle." Max informed Officer Long, as a security officer, he cannot carry a rifle while on duty which seem to anger Officer Long even more. Officer Long kept on shouting at Max. Max told Officer Long to leave as this was private property and not to come back to which Officer Long stated that he was a police officer.

21. About an hour later four marked and one unmarked Houston Police Department units came on the property to arrest Max for aggravated assault. Max had not committed aggravated assault.

22. Max complied with all of the instructions from the arresting officers and informed them including Defendant Officer M.K. Lam and a Caucasian police officer about 6 foot or so tall and bald (John Doe Officer) that there was video surveillance evidence to prove his innocence while they stripped him of his security officer equipment. See **Exhibit 1,** Order with list of restored personal property.

23. Max requested the officers to allow him to call his boss to inform her of what was happening. As Max spoke to his boss Max said loudly that there was video evidence to prove he was innocent. Max had the ability to show the officers

any video property surveillance footage they wanted to see. Defendant Officer M.K. Lam and John Doe Officer being fully aware of the exculpatory video evidence readily available made no effort to view it or collect it.

24.     John Doe Officer drove Max to the Harris County jail with M.K. Lam as the passenger. Max was charged with aggravated assault with a deadly weapon and his bond was set at $30,000.00.

25.     Max sat in jail for around 30 or so hours until he bonded out which cost about $3000.00 to a bailbond company.

26.     Among the requirements of Max's bond was not to leave Harris County and the immediately adjoining counties and that he had a monitor app put in his phone utilizing GPS technology. Max was required to photograph himself on occasion to prove he possessed his phone and was in the allowed counties. During the time Max was on bond he wanted to leave the allowed counties and go to Travis County to celebrate his cousin's completion of basic training for the Air Force but could not.

27.     Max had to appear in court a few times until eventually the case against him was dismissed in his favor without any obligation whatsoever. Max's criminal defense lawyer charged around $9000.00.

28.     Max lost his job due to the false charges.

29.     Max suffered loss of sleep, headaches, anxiety, depression and other

mental anguish as a result of the defendants' actions.

30. Max filed a complaint to the Houston Police Department but no discipline resulted. The City of Houston has or had a policy that no officer could be punished 6 months after an incident occurred.

## VIOLATION OF THE 4TH AND 14TH FOURTEENTH AMENDMENTS

31. Plaintiff incorporates all preceding paragraphs as if set fully set forth herein.

32. The Fourth Amendments guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV.* The 14th Amendment allows for due process of law. Such violations are actionable pursuant to 42 U.S.C. Section 1983 and 1988.

33. There was no probable cause for the arrest or prosecution of Plaintiff which is Fourth Amendment violation and actionable under 42 U.S.C. Section 1983. Plaintiff sues the Defendants for false arrest and malicious prosecution.

34. The City of Houston has a custom, policy, practice, and procedure of falsely arresting individuals and then not disciplining or training officers adequately and the City is therefore liable under 42 U.S.C. Section 1983 and 1988. There is a pattern and practice of false arrests and malicious prosecutions and condoning of such behavior. This pattern and practice was ratified by the City of Houston Police Department when the department determined that the officers' actions were

consistent with department policy.

## LIABILTY FOR FAILURE TO INTERVENE

35. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

36. A law enforcement officer "who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Although *Hale* most often applies in the context of excessive force claims, this Court recognized that other constitutional violations also may support a theory of bystander liability. *Whitley v. Hanna*, 726 F.3d 631, 646 n. 11 (5th Cir. 2013)(citing *Richie v. Wharton County Sheriff's Dep't Star Team*, No. 12–20014, 2013 WL 616962, at *2 (5th Cir. Feb. 19, 2013)(per curiam) (unpublished)(noting that plaintiff failed to allege facts suggesting that officers "were liable under a theory of bystander liability for failing to prevent ... other member[s] from committing constitutional violations")). Further, the Second Circuit has stated that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). *See* also, *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)("we believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed

by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."). Thus, officers such as Lam and Officer John Doe may be liable under § 1983 under a theory of bystander liability when the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley*, 726 F.3d at 646.

## ASSAULT

37. Plaintiff brings a claim of assault against the individual Defendants but not the City of Houston. The individual defendants did not act in good faith.

38. The elements of assault are the same in civil and criminal suits. *Hall v. Sonic Drive-In of Angleton, Inc.,* 177 S.W.3d 636, 649 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Morgan v. City of Alvin,* 175 S.W.3d 408, 418 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A person commits an assault if the person (1) intentionally, knowingly or recklessly causes bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Tex. Penal Code Ann. § 22.01(a) (Vernon Supp. 2010). The common law tort of assault exists to redress

personal injury caused by offensive physical contact or the threat of imminent bodily injury. See *Hall v. Sonic Drive-In of Angleton, Inc.,* 177 S.W.3d 636, 650 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

## MENTAL ANGUISH

39. Plaintiff incorporates all preceding paragraphs as if set fully set forth herein.

40. Max suffered at least anxiety, fear, anger and depression because of the acts of the individually named defendants and the City of Houston and, therefore, and seeks damages for mental anguish past and future as well as the pain and suffering, past and future, and other damages set forth above.

## PUNITIVE DAMAGES

41. Plaintiff incorporates all preceding paragraphs as if set fully herein.

42. The individually named defendants actions and inactions cause them to be liable for punitive damages as they were consciously indifferent to the plaintiff's constitutional rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

## ATTORNEYS' FEES

43. Plaintiff is entitled to recover attorneys' fees and costs to enforce his Constitutional rights and under 42 U.S.C. Sections 1983 and 1988.

## JURY TRIAL

44. Plaintiff requests a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Maximo Espinal requests that the Court:

A. Enter judgment for the plaintiff and against the individual defendants and the City of Houston holding them jointly and severally liable;

B. Find that Plaintiff is the prevailing party in this case and award attorneys' fees and costs, pursuant to federal law, as noted against all defendants;

C. Award damages to Plaintiff for the violations of his Constitutional rights;

D. Award Pre- and post-judgement interest;

E. Award Punitive damages against each and every individually named defendant, and

F. Grant such other and further relief as appears reasonable and just, to which plaintiff shows himself entitled.

RESPECTFULLY SUBMITTED,

/s/ *Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas No. 00790995
Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:   713.320.3785
FAX:              713.893.6737
E-mail:         AttorneyKallinen@aol.com

/s/ *Joseph Mathew*
Joseph Mathew
The Law Offices of J. Mathew, PLLC
State Bar of Texas No. 24077716
Southern District of Texas Bar No. 1503204
234 W 23rd Street
Houston, TX 77008
Telephone:   281.241.9722; 713.942.9101
FAX:              281.617.1997
E-mail:         jmathew@jmathewlawfirm.com

ATTORNEYS FOR PLAINTIFF