UNITED STATES DISTRICT COURT   SOUTHERN DISTRICT OF TEXAS

United States District Court
Southern District of Texas

**ENTERED**

January 26, 2023

Nathan Ochsner, Clerk

| | | |
|---|---|---|
| Maximo Espinal, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | Civil Action H-22-1149 |
| | § | |
| City of Houston, Texas, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Dismissal

Maximo Espinal brought suit against the City of Houston and three individual officers, and the defendants have moved to dismiss Espinal's claims for failure to state a claim. The defendants' motions will be granted, and this case will be dismissed.

1.    *Background*

According to Maximal Espinal, he is a nighttime security officer in an office building. On April 9, 2020, he noticed an SUV trespass onto the property. He left the building with a shotgun and flashlight to investigate, and Officer M.T. Long, who had been working that area and drove that SUV, stated that he was the police. Officer Long asked Espinal why he had a rifle, to which Espinal responded that the firearm was actually a shotgun and it was a high crime area. It is unclear from the pleadings how this interaction concluded.

Shortly after midnight on April 11, 2020, Officer Long returned. Espinal was already outside, and Officer Long drove the vehicle in Espinal's direction, stopping approximately five yards in front of Espinal and putting him directly between the headlights. Espinal "gripped his shotgun tightly at the low ready"

before the vehicle backed up and Officer Long lowered its front passenger window, at which point Espinal identified Officer Long and his SUV as the same man and vehicle from the previous night. The two had a verbal altercation wherein Officer Long shouted at Espinal that he could not carry a rifle on duty, and Espinal directed Officer Long to leave the property and not return. Officer Long left the property and returned about an hour later with additional officers and vehicles, at which point Officer Long and a John Doe officer arrested Espinal for aggravated assault. The John Doe officer drove Espinal to jail, with Officer M.K. Lam in the passenger seat.

Espinal brings claims arising out of this incident against the officers and the City of Houston. Against the officers individually, he alleges violations of his Fourth and Fourteenth Amendment rights, namely for false arrest, malicious prosecution, and failure to intervene, and claims of assault and mental anguish. Against the City of Houston, he asserts claims of municipal liability and mental anguish.

2.   *Legal Standards*

   A.   *Rule 12(b)(6)*

Rule 12(b)(6) allows a party to defend against a claim by moving to dismiss it for failure to state a claim upon which relief can be granted.[1] Plaintiffs must offer specific, well-pleaded facts, as opposed to merely conclusory allegations.[2] Mere labels, conclusions, and formulaic recitations of the elements of a cause of action will not suffice.[3] Courts in turn must accept well-pleaded facts as true, and view them in the light most favorable to the plaintiff.[4] In sum, a

---

[1] Fed. R. Civ. P. 12(b)(6).

[2] *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 570).

complaint fails to state a claim upon which relief may be granted when the underlying legal claim is insufficiently supported by well-pleaded facts, or when the well-pleaded facts, even when accepted as true, do not state a legally cognizable claim.

B.    § 1983 and Qualified Immunity

Plaintiffs who assert violations of their federal rights under color of state law have a cause of action under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States, and that the violation was committed by someone acting under color of state law.[5]

When sued in their individual capacities, government officials are shielded by qualified immunity to the extent that their conduct does not violate clearly established statutory or constitutional rights.[6] To overcome qualified immunity, the plaintiff must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.[7] To be clearly established, there must exist controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.[8]

In the particular context of false arrest claims, qualified immunity is a significant hurdle because it applies if an officer could have reasonably, arguably believed that there was probable cause; actual probable cause is unnecessary.[9]

---

[5] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[6] *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016).

[7] *Id.* (citing Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).

[8] *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (citations omitted).

[9] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206–07 (5th Cir. 2009) (citations omitted).

C.     *Independent Intermediary Doctrine*

Under the independent intermediary doctrine, when an intermediary like a magistrate or grand jury reviews the facts and allows a case to proceed, that decision breaks the chain of causation for false arrest and insulates the initiating party.[10] In this case, liability will nevertheless attach only if the plaintiff demonstrates that the deliberations of the intermediary were in some way tainted by the actions of the defendant.[11] At the summary judgment stage, mere allegations of taint are insufficient; at the motion to dismiss stage, such allegations may be adequate to survive dismissal where the complaint alleges other acts supporting the inference.[12]

D.     *Municipal Liability*

For municipal liability to apply under *Monell*,[13] a plaintiff must show that an official policy or custom, promulgated by the municipal policymaker, was the moving force behind the violation of a constitutional right.[14] A municipality is responsible only for its own illegal acts and cannot be held liable under a *respondeat superior* theory.[15]

An official policy or custom can be demonstrated in one of three ways: (1) written policy statements, ordinances, or regulations; (2) a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy; or (3) under "rare circumstances," a single act can be considered a policy if performed by an official or entity with "final

---

[10] *McLin*, 866 F.3d at 689 (citations omitted).

[11] *Id.* (citations omitted).

[12] *Id.* at 689–90.

[13] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

[14] *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir.2009) (citations omitted).

[15] *Monell*, 436 U.S. at 691 (1978).

4

policymaking authority."[16]

The policy must itself be unconstitutional or adopted with deliberate indifference to the known or obvious fact that constitutional violations would result, as opposed to merely an unintentional negligent oversight.[17] Under § 1983, a policy can include failure to train; that failure, like other policies, must amount to a deliberate indifference to the rights of persons with whom the police come into contact.[18] To hold a municipality liable for a policy based on a pattern, the pattern must have occurred so long or frequently that employees know, expect, and accept the practice; this inquiry looks into similarity, specificity, and numerosity based on incident's context and the municipality's police force.[19]

E.      *Bystander Liability*

An officer may be liable under § 1983 for failure to intervene under a theory of bystander liability when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm, and (4) chose not to act.[20] The officer must have acquiesced in the violation and been present at the scene, as opposed to merely in the vicinity.[21]

The culpability of the bystander officers is predicated, of course, on the liability of the officers who committed the allegedly illegal acts. If the latter is

---

[16] *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (citations omitted).

[17] *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (citations omitted).

[18] *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009) (citations omitted).

[19] *Kennard v. City of Houston*, No. CV H-22-3365, 2023 WL 159782 (S.D. Tex. 2023) (citations omitted).

[20] *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020) (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).

[21] *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013) (citations omitted).

adjudicated to have not violated the plaintiff's constitutional rights at all, then the former necessarily saw conduct that did not violate the Constitution and are not liable for failure to intervene.[22]

### F.   TTCA Immunities

Under the Texas Civil Practice and Remedies Code, a governmental employee is entitled to dismissal of an individual-capacity suit against him when: (1) the suit is based on conduct within the general scope of his employment, and (2) the suit could have been brought against the governmental unit.[23]

### 3.   Officer M.T. Long
#### A.   Qualified Immunity
##### i.   Reasonableness

A false arrest claim cannot survive qualified immunity if the officer could have reasonably, arguably believed that there was probable cause. Espinal was arrested with aggravated assault. It is undisputed that as Officer Long approached, Espinal held his shotgun "tightly at the low ready" position.[24] This incident with Espinal and his firearm occurred past midnight in an admittedly high-crime area, came on Officer Long's second encounter with Espinal in a span of a few days, and allegedly involved a combative exchange wherein Espinal instructed Officer Long to leave.

While it may be arguable that Espinal did not actually have probable cause, the Court need not decide whether probable cause in fact existed. Given the position of Espinal's firearm and the nature of the sides' exchange, Officer

---

[22] *Bartlett*, 981 F.3d at 344 (observing that if the two officers did not inflict unconstitutional force, the officers who observed the two officers' actions merely saw conduct that did not violate the Constitution).

[23] TEX. CIV. PRAC. & REM. CODE § 101.106(a); *Smith v. Heap*, 31 F.4th 905, 913 (5th Cir. 2022).

[24] [Doc. 18] at ¶ 18.

Long could have reasonably, arguably believed that there was probable cause. Since his belief is reasonable in light of the totality of the circumstances, Officer Long is protected by qualified immunity.

### ii.      Clearly Established Right

Espinal has also failed to meet his burden to show that any officer violated a right that was clearly established at the time of the alleged violation. Espinal has failed to cite any authority that defines the contours of his alleged right with a high degree of particularity. Presently, that right might be framed, in the particular, as the right of a heavily-armed civilian security officer to wield a firearm for readily use in an interaction with law enforcement. The absence of this authority also dooms his attempt to defeat qualified immunity.

### B.      Independent Intermediary Doctrine

The Court's determination that Officer Long's actions are protected by qualified immunity obviates the need to analyze the defense's argument that the chain of causation has been broken by the grand jury's indictment. Finding this doctrine straightforward and also determinative, however, the Court notes that it would also independently absolve Officer Long of liability.

Taking judicial notice that the grand jury indicted Espinal for this aggravated assault charge, the chain of causation has been broken. At this stage, to survive dismissal, Espinal must allege that the grand jury was "tainted" by the defendant's motives and actions which misdirected the grand jury, and offer acts supporting such an inference. Espinal has proffered nothing to this effect; he has not pleaded that the grand jury was tainted, and merely speculates in his response brief that since no reasonable person could have found that there was probable cause, the grand jury must have "either not [been] given all the facts, or were given an embellished version of the facts."[25] This conclusory allegation is insufficient, so the independent intermediary doctrine also instructs the Court

---

[25] [Doc. 30] at 10.

to dismiss Espinal's claims against Officer Long.

C.   *Malicious Prosecution*

In light of this Court's determination that Officer Long is not liable on the false arrest claim, he consequently cannot be liable under a claim of malicious prosecution, which "standing alone is no violation of the United States Constitution," and must rest upon a denial of rights secured by federal law.[26]

D.   *Assault and Mental Anguish*

Espinal's assault claim arises out of conduct within the officers' scope of employment, so it is a *de facto* suit against the City of Houston. Since assault is an intentional tort under the TTCA, this claim will also be denied.[27]

To recover for mental anguish damages, tort liability must be independently established.[28] Since Officer Long is not liable, Espinal cannot recover damages for mental anguish, regardless of whether he has experienced mental anguish.

4.   *Officers C. K. Lam and John Doe*

A.   *§ 1983 Claims*

Insofar as Officer Lam and the unknown Officer Doe's involvement, Espinal pleads that on the night of the incident, they were among the arresting officers when Officer Long returned to arrest him. Espinal also claims that Doe drove him to jail, and Lam was the passenger.

While Espinal's pleadings are not entirely clear as to which claims he asserts against which officer, none have merit. Since the liability of Officers Lam and Doe is predicated on the liability of Officer Long, and Officer Long has

---

[26] *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 658 (5th Cir. 2004) (citations omitted).

[27] TEX. CIV. PRAC. & REM. CODE § 101.057(2)

[28] *Parkway Co. v. Woodruff*, 901 S.W.2d 434 (Tex. 1995) (citing Nancy Levit, *Ethereal Torts*, 61 GEO. WASH. L. REV. 136, 142 (1992).

committed no constitutional violations in light of his qualified immunity, Officers Lam and Doe are necessarily also absolved of liability. This determination also extends to the malicious prosecution charge, for the same reason as enumerated for Officer Long.

### B.    Common Law Tort Claims

Espinal apparently pleads his claims of assault and mental anguish against Officers Lam and Doe as well; to the extent that he does, these claims are denied for the same reasons as in the Court's analysis for Officer Long.

### 5.    The City of Houston

### A.    § 1983 Municipal Liability

If the City of Houston is to be held liable, it must be under a theory of municipal liability. Antecedent to an inquiry into municipal policies or customs, however, courts should consider whether the plaintiff has shown a violation of a constitutional right at all.[29] The Court's foregoing analysis determined that none of the officers are liable on any of Espinal's claims; absent any constitutional violations, there is nothing for the City of Houston to be liable for.

Even if an officer committed a constitutional violation, Espinal has fallen far short of his burden to demonstrate that the violation was pursuant to a policy or custom. In his list of "instances of excessive force," Espinal engages in a discussion of exclusively dissimilar incidents, most of which involve wholly different contexts. Since there are no constitutional violations, and nothing indicates a policy or custom even if there is a violation, claims of municipal liability against the City of Houston will be denied.

### B.    Mental Anguish

Espinal also names the City of Houston as a defendant in his mental

---

[29] See Petersen v. Johnson, 57 F.4th 225, 235 (5th Cir. 2023) (holding that since the plaintiffs' claims against the employee fail, the municipal liability claim against the city "must also fail").

anguish claim. For the same reasons articulated in the Court's analysis of this claim as applied to the individual officers, this claim will be denied.

8.   *Conclusion*

Since each of Espinal's claims fail, his suit against the City of Houston and each of the officers will be dismissed. This dismissal will be with prejudice, as he has already amended his original complaint in response to a motion to dismiss; moreover, amendment would also be futile, as it is highly improbable that Espinal can cure the legal deficiencies that doom his case.[30]

Signed on January **26**, 2023, at Houston, Texas.

Lynn N. Hughes
United States District Judge

_____

[30] *See, e.g., Kennard,* 2023 WL 159782 at *4 (S.D. Tex. 2023) (reaching the same conclusion in a substantially similar context).